That is 514-0512. People v. Ross Devers. Ms. Atkins and Mr. O'Neill. Ms. Atkins, when you're ready. Good morning. May it please the court, counsel, Whitney Atkins for the State of Illinois. On June 1, 2014, at approximately 2.40 a.m., W. Sheriff Clayton Penrod was dispatched to 5090 Midway Road in Massac County to respond to a burglar alarm that was going off at that residence. Upon arriving at that residence, he noticed two individuals riding in a golf cart on the public roadway that was directly in front of the residence with the burglar alarm going off. So he activated his signal lights to indicate to the golf cart to stop. He saw no other individuals in sight. The golf cart stopped. Upon engaging the occupants of the golf cart, the defendant identified himself as Ross Devers. He didn't have his ID, but he provided his birth date. According to his birth date, Sheriff Penrod was able to determine that the defendant was under the age of 21. He could smell the odor of alcohol coming from the golf cart. He secured the defendant and the other passenger in the golf cart in the back of his quad car. He told the defendant that he was not under arrest, that he was merely detaining him just to ensure that he had nothing to do with the burglar alarm that was going off. He drove the... He put the two boys in the squad car? Yes, he did. In the back of the squad car? In the back of the squad car. The doors were locked? I don't believe there's any evidence that the doors were locked. Okay, and then he drove the boys in the back of the car to the residence. They were already at the residence. I mean, he didn't really drive them to another location. He drove them to... How far was it? I'm sorry, what was it? How far was it? Within feet. Yeah, that's why I didn't understand the driving. Okay, so they're in front of the residence, and then they drive up the driveway of the residence and park at the top of the driveway. I mean, he didn't drive them to another location. He just drove them closer to the actual home. Okay. So... And at the time he stopped then, he had no description of anybody that was fleeing the residence. He just had an alarm going off and two boys in a golf cart. Yes. At the time, it was very early in the morning. He was dispatched specifically to investigate this burglary alarm and drive the golf cart. Well, what I'm trying to get at is nobody, over the radio, nobody said there's two suspects fleeing in a golf cart. They're wearing a plaid shirt, whatever. No, there was no information. Just like that. Were they in any way otherwise detained by handcuffs? No. No. And in fact, he specifically told them, you are not under arrest. I am merely detaining you to ensure you have nothing to do with this burglary. So he told them, you know, what the purpose of his detainment was. And so he clears the home. He checks around the home and eventually talks to the homeowners and they inform him that the burglary alarm was inadvertently set off. It was an accident. He comes back to the squad car, tells the defendant, you know, you can come on out of the squad car. And he says, you know, I can smell alcohol on your breath. Have you been drinking? And the defendant admits that he's had a couple of beers. At that point, he asked the defendant, would he submit to a preliminary breath test? The defendant complies and the results were .061. At the hearing on the motion to suppress, the circuit court suppressed any and all statements that the defendant gave Officer Penrod and the results of the PBT. Well, the court found that the stop was reasonable, correct? Yes, it did. So you have a reasonable tarry stop, if you will. Yes. And then the finding of the court was that after determining the burglary alarm was a false alarm, the officer then, when he put them in the squad car, had actually seized them. They were under arrest and the tarry stop had gone too far. Is that right? Right. And so the circuit court finds that at that point, not only has the tarry stop gone too far, but also what's also problematic is that the defendant was not Mirandized, which the circuit court also seemed to find led to the exclusion of the subsequent confession and PBT. So, as we've already kind of discussed... Well, why should we reverse? Well, you should reverse because the case law says, precedent says, that merely restraining the defendant in a squad car does not automatically convert a tarry stop into arrest. But based upon these facts, especially, you should reverse because the tarry stop was not converted into arrest merely because the defendant was put into a squad car. The police officer was alone. He was responsible for investigating this burglary. But not only was he responsible for investigating this burglary, he also had this sort of simultaneous investigation of underage drinking because, remember, he had smelled the alcohol upon his first engagement with the defendant. So, it was really his duty to detain the defendant to make sure that he had nothing to do with the burglary. Let me ask you a question. If this officer had stopped the boys on the street, as he did, and gotten a radio call that there was a false alarm, and had never put them in the car, but then started asking questions about, you know, have you been drinking tonight, did the PBT, do you think that this court ruling would have been different? I think the court ruling would have been different, and that also kind of illuminates the sort of error with the court's ruling because the court extends what they find to be the unlawful arrest to the PBT test, which as you've kind of illuminated, you know, that's severed. And that doesn't require a Miranda warning. That didn't occur while they were in the squad car. There's testimony that he very well would have administered the PBT regardless of the admission. So, for that very reason, that's also for the very reason that the unlawful detainment, the finding of the unlawful detainment is separate from the administration of the PBT test, is the secondary reason in which you should reverse the judgment below. And we pretty much discussed all the points that I was going to discuss, so if you have any other questions. That's our goal. Okay. We ask that you reverse the circuit court suppression of the confession and the PBT results. One second. One more question. Okay, thank you very much. Mr. O'Neill, talk to us about a Terry stop. If you will. Sorry. It's okay. I get over-anxious sometimes. An officer under Terry, an officer may briefly detain a person if the officer has a reasonable suspicion that the person has committed or is about to commit a crime. In this case, it would be the burglary. Because if the stop is justified based upon the golf cart, driving the golf cart on the public road, that investigation exceeded its proper scope and length when Emeron placed Mr. Degers in the squad car and had to detain him for 25 minutes. Mr. O'Neill, the fact of the burglary investigation address the fact of how that affects the overall issue of the Terry stop. Should the court look at the overall circumstances of what the officer is doing and the reasonableness of the way he conducts the Terry stop? Your Honor. What is potentially a Terry stop? Well, the ultimate question for the court is whether there were specific and articulable facts to provide a reasonable suspicion that Mr. Degers had committed or was about to commit a burglary. So then you look at what facts were available to Penrod at that time regarding the burglary. And all Penrod knew at that time was that there was a burglar alarm going off and that the golf cart was driving by the house. However, mere presence here. So do you agree that that initial stop was a valid stop? That wasn't developed below it. I mean, the question for the court became quickly, what was the status of Mr. Degers when he was placed in that squad car? So you're not questioning the original stop? I'm saying that it wasn't developed below it, Your Honor. He's not conceding anything. Let's just say, to try to answer your question, Your Honor, if the stop was lawful for him to be driving in a golf cart on a public road, then there's not sufficient evidence even for that because Penrod did not, to justify a Terry investigation based upon the golf cart, because Penrod did not even ask Mr. Degers about the driving on the golf cart. The investigation immediately turned to the burglary. So the burglary and the status of Mr. Degers after he was placed in that squad car was at issue here. And that is based upon whether there were specific and articulable facts to create a reasonable suspicion that Mr. Degers had committed a burglary or was about to commit a burglary. And I submit to this court there are insufficient facts to provide a reasonable suspicion. Didn't the officer testify that the reason he stopped them was because burglary alarm and because it was illegal to operate the golf cart on a public highway? And I think that's what Justice Moore is getting at. I'm sorry. He did testify. I think the word in the case is about to commit a crime, has committed or about to commit a crime. That's correct. I did testify that the basis of the stop was twofold. The burglary, he said primarily the burglary and the golf cart was driving on a public highway. But again, the facts surrounding whether it was unlawfully driving on a public highway hadn't been really developed because it wasn't presented below. So again, the question is whether the status of Mr. Degers when he was placed in that squad car. And that is dependent upon whether there was reasonable or articulable suspicion. We don't think the facts support a reasonable suspicion that Mr. Degers had committed the burglary. Again, presence is not sufficient. Moreover, there is no report of a burglary. There was no report of suspects. There was Mr. The golf cart didn't try to flee or Mr. Degers did not act suspiciously when Officer Penrod approached the golf cart. There was no evidence that Penrod observed any evidence of a burglary when he approached the golf cart. So all these facts created did not establish a reasonable suspicion that Mr. Penrod had committed a burglary. So what was that status when he was in the car for up to 25 minutes? He was unlawfully seized under the Fourth Amendment. Does the record show how long they were in the car? I think Penrod said longer than five minutes or less than 30 minutes. But, you know, again, Officer Penrod testified that when he went to check to determine whether a burglary had occurred, and at this time Mr. Degers was still in the squad car, Penrod walked around the property to see if there was any evidence of a burglary, spoke to the owner. Was there any amount of time that they were in the car that would have been reasonable? Not for the burglary, Your Honor, because there was not specific and articulable facts that justify a Terry investigation for the burglary. What about for the golf cart or the underage drinking while he was investigating another crime? Yes, possibly there could have been some Terry investigation for that, perhaps, but that is really irrelevant because Degers was detained in the squad car for up to 25 minutes based upon the burglary. So if Officer Penrod was proper to investigate the driving of the golf cart, for example, he would have asked questions about that. He would have perhaps written a traffic citation, and Mr. Degers was gone in a minute, two minutes or whatever. And regarding the unlawful consumption of alcohol, I would argue that there wasn't a reasonable suspicion to detain him very long either because the suspicion arose, arguably, when Mr. Degers confessed to having drank alcohol. So even the unlawful consumption of alcohol was based upon… What about when he said he could smell it? I would argue that that doesn't provide a reasonable suspicion that he is unlawfully consumed alcohol, Your Honor. There was two people in the vehicle, in the golf cart, and there's Penrod's testimony. At one point, I believe, I want to misrepresent, there was a generalized smell of alcohol. So then when the first person who was questioned about whether he was drinking alcohol was the other guy, a guy named Comer, and that he admitted he was drinking alcohol. So perhaps at that time, after that, that alleviated the suspicion of Mr. Degers of drinking alcohol. But the point is that that smell itself, I would argue, is not sufficient for a terror investigation regarding the underage consumption of alcohol. Was the golf cart in motion going away from the residence at the time that Officer Penrod stopped it? I know it wasn't stopped. I'm sorry? I know that the golf cart wasn't parked in front of the residence. I don't know if that specifically was answered, but certainly the record reads as if… Well, actually, to take that back, Officer Penrod said that he had to, you know, that he followed the golf cart not very far, obviously, and had to activate his lights. You know, and then the vehicle, the golf cart stopped. So that certainly suggests to me that it was mobile, it was moving, certainly away from the residence. So… So if – I want to ask you the same question that I asked the State. So if the stop would have occurred as it did and the generalized smell of alcohol was smelled by the officer, you don't think that at that time the officer could have administered or asked questions and administered the test? I believe my answer is no, Your Honor. And it wasn't until the passenger actually confessed that led to the contention of the other, the defendant? Yes. Yeah, well, after Penrod investigated the murder, he approached the two defendants, and the co-owner was the first one to get out. Right, but I'm talking about when they were still in the golf cart before they had been put into the car. No, I don't think that a reasonable suspicion pertaining to Deavers' unlawful consumption of alcohol by a minor occurred until he confessed. So the trial court quickly found that Mr. Deavers was unlawfully seized under the Fourth Amendment, and that all of the evidence obtained as a result of that unlawful seizure, both the confession and the preliminary breath test, must be suppressed under the Fruit of the Poisonous Tree Doctrine. Now, there was another reason that the confession was properly suppressed, and that was because the trial court found that Mr. Deavers was seized under the Fourth Amendment at the time he was placed in the squad car and remained in custody until Officer Deavers asked him whether he had been consuming alcohol. However, Officer Penrod did not administer Miranda warnings, and then Mr. Deavers made an incriminating statement. The trial court suppressed the statements in violation of Miranda. The trial court was correct in suppressing this evidence, Your Honor, as I ask you to reaffirm. Thank you so much, Mr. Arden. Thank you. Ms. Atkins? Do you agree with Ms. Romeo? No, I don't. First, he brings up the fact that the confession was suppressed because of lack of Miranda warnings, but the fruit of a forbidden tree does not apply to Miranda violations, and a PBT test is non-testimonial and does not require Miranda. Before you get into that, let's assume for the sake of argument that the stop was good. Okay. The officer investigated this potential burglary, found out, in fact, there was no burglary, and told the two occupants, according to his testimony, they were not under arrest. At that point, once it's determined there was no burglary, why isn't the failure to Mirandize someone who's under the officer's control getting out of a squad car a questioning without Miranda outside the scope of the activities that the officer lawfully had taken before? That brought them into the squad car. Why isn't it a beyond-the-scope problem, focusing on the second prong of the order that the trial court made? So, I'm hearing your question as assuming that the defendant was arrested? No. Assuming that the defendant was not arrested. Let's assume for the sake of argument that the defendant was properly detained for a Terry stop. Okay. At that end, when the officer determined there was, in fact, no burglary. There wasn't? There was not. Okay. So, these two individuals could not be part of that unlawful act. The actions that the officer took without Miranda past that point really is the basis for the trial court's order saying that the statements were beyond the scope of any lawful activity the officer may have done. And why wouldn't that be a sufficient basis to affirm what the trial court ordered? The basis being that the Terry stop was . . . Ended. That it had been converted to an arrest, right? No. That it had ended and . . . Well, it was a custodial situation. Arrest is different than custodial. Oh, okay, okay, okay, okay. I think that's more justice. Okay, okay. Right. I have a custodial situation. Okay, now I understand. So, your question is, why if, assuming that it was a custodial situation, why . . . How do I address the Miranda issue, assuming that was a custodial situation? Okay, well, I would address that with two points. First, again, a PBT is non-testimonial. Miranda does not need to be given prior to a PBT. Secondly, the circuit court's determination was that because the confession was given without the defendant being Mirandized, the PBT test was then fruit of this unlawful confession. But Miranda, the fruit of a forbidden tree does not apply to Miranda. So, just because the . . . Is a PBT a privilege in Illinois? If you . . . well, in this case, the defendant gave his implied consent. I mean, he was operating their vehicle, and the officer had reasonable suspicion that he was consuming alcohol while driving the vehicle. Thank you very much for your arguments. I apologize for standing, but I've had some surgery in the past, so sometimes I have to do that. Thank you. Okay, this matter will be taken under advisement, and an order will be issued, hopefully in the near future. The court is going to take a short recess before the 11 o'clock argument.